### BASILIO CASTILLO *against* JOSEPH WALKER.

Where the property of a sub-tenant is distrained for rent due from his imme-
diate landlord, rent arrear from such landlord cannot be proved by the pro-
duction of an account adjusted between him and his immediate landlord.

Irregularities in a distress, may lay the foundation of a special action for
damages, but cannot defeat proceedings otherwise correct.

The property of a boarder, *quâ boarder*, but not his stock in trade in the house,
is protected against seizure for the rent of the boarding-house keeper.

The reservation of a precise sum as rent, concludes the parties to a lease and
those deriving rights under it, and they are not at liberty to go behind the
seal and canvass its component parts with a view to defeat a distress for
such rent.

A clause in a lease, prohibiting a transfer to a sub-tenant in whole or in part,
without a written permission from the landlord, does not extend to the
granting of a mere privilege or right of way.

If a landlord allows a door to be opened, from a distinct building, so as to
form a communication with the hall or entry of premises demised by him
to another party, and with the assent of such party, the hall or entry be-
comes so far common that the property of the tenant of the distinct building
in its transit from such building, through such hall, is not liable to seizure
for the rent of such other party.

TRESPASS, *de bonis asportatis.*

Plea, general issue, with special notice of demise of the
*locus in quo* to one Milford; rent, arrear and distress, &c.,
which is the same trespass, &c.

It appeared that the defendant, being the owner of an extensive hotel, in the city of New York, called Carlton House, demised the same by a very special lease under seal, to Eliza Milford, for a term of years, at an annual rent of $12,000, payable monthly, with full power to distrain. This lease contained a covenant, binding the lessor to place upon the premises $10,000 worth of furniture, "which, at the end of the term, he bound himself to convey to the tenant, if she, in the mean time, fulfilled all the covenants on her part in the lease. It also contained a clause restraining the tenant from all under-letting of every kind or character, of any part of the premises, without the written permission, at each and every time, of the landlord. Permission, however, was granted by the lease to underlet the bar-room, "the same, however, always to continue connected with the business of the hotel." It also appeared that one room on the right of an entrance from the street, but not connected with the hall, was demised to Miss Milford, by a distinct demise from the same landlord. This again was underlet, by Miss Milford, to the plaintiff. The bar-room opened on the hall, which was part of the premises demised exclusively in the lease.

After the room first above mentioned was demised to the tenant, and underlet by her to the plaintiff, she, with the landlord's verbal assent, gave plaintiff permission to open another door from that room into the hall.

A large amount of rent being claimed to be due, and in arrear for Carlton House, and six months' rent also for the room last demised, the landlord issued separate warrants of distress for each, and, among other things, seized and sold a quantity of segars, claimed by plaintiff as his property, and for their value this action was brought.

Castillo v. Walker.

The plaintiff having proved the seizure, the defendant proved the distress warrants and the seizure and other proceedings under them, and then proved that the agent of the tenant, the officer or bailiff, and the landlord, all attended at the office of their common attorney, in a friendly way, prior to the distress, and then the attorney filled up the warrants of distress, with the precise amounts claimed under each demise, and at the same time verified the inventory of all the articles in the house, by the oath of the agent and manager of the tenant, separating the tenant's property from the landlord's. That they stated their object to be the "fixing of a lien on the property."

The plaintiff, in proving his case to the jury, called the agent as a witness, who testified that, at the time of the distress, no rent was due for the room last demised, and that, by an agreement by parol with the landlord, the sub-tenant of the bar-room having paid his rent for that part distinctly to him, by payments to the tenant, and which she had paid over to the landlord, no rent for the bar was in arrear.

To rebut this, a regular account current of all the rents and payments from the commencement of the leases, in the hand-writing of the tenant, showing that rent was in arrear as expressed in the distress warrants, for Carlton House, including the bar-room and for the room last demised, distinctly showing also payments generally made and applied to the whole rent, without severing the bar-room, was then offered in evidence by the defendant.

*Cutting*, for plaintiff, insisted that the best evidence of the fact was behind, viz. the principal tenant, and that she ought to be called.

*Anthon*, for defendant, insisted that, on this part of the justification for rent arrear, this account was admissible on two grounds:

1. That the plaintiff, as sub-tenant, must necessarily be considered identified with the principal tenant against whom the distress warrant issued, and her hiring and the adjustment of her accounts must bind him.

2. That, it being a matter of fair inference, from the evidence, that the attorney, in the presence and at the instance, or at least with the privity of the authorized agent of the tenant, had taken the several balances from this account when he filled up the warrants at the common request of landlord and tenant, it formed part of the *res gestœ*, and was admissible as such.

JONES, C. J.   I incline to think, with defendant's counsel, that on this part of the case the plaintiff must be considered to some extent identified with the tenant; but I do not feel my convictions strong enough to rule in the evidence, on that ground, and I am clear it cannot be considered as part of the *res gestœ*. I must, therefore, but with much hesitation, rule that the account is not admissible on either ground.

The defendant then proved that, after they had completed the inventory, but before the articles distrained were appraised, the goods in question were found in three trunks, in the hall of Carlton House, where they had been removed from the room which had been separately demised. They were there seized, and an item added to the inventory in these words, " cigars, $20, per M.," no quantity being expressed and no amount carried out. It also appeared that they were claimed by the plaintiff, who was a boarder in

Castillo v. Walker.

the house, who had them in the house for some time, as merchandize, for sale, stowed in the room above mentioned, from whence he was in the act of removing them into the street, when they were seized. Some other irregularities also appeared to have occurred, in the course of the distress.

*Cutting* insisted, 1st. That these and other irregularities invalidated the distress entirely as to the property of third persons. 2d. And also that the property seized, being the property of a boarder, was privileged from distress.

*Anthon*, contra, contended that irregularities in the distress would only lay the foundation for a special action by the party injured, in which he would be compelled to point out, by averment, the precise irregularity and claim for the damages resulting from it; and, as to the second point, that the statute only protected property belonging to the boarder *quâ boarder*, and not his stock in trade brought into the hotel, as this was.

JONES, C. J., ruled both points with the defendant.

The plaintiff then offered to show that the furniture, stipulated by the landlord to be placed on the premises by him, amounting to $10,000, formed a component part of the rent reserved, and could not be distrained for, and that, therefore, the proceedings were defective.

*Anthon.* Such testimony is not admissible. The $12,000 is reserved *quâ* rent, and, as between landlord and tenant, and all others, like plaintiff, affected by the contract, it is rent, and they cannot look behind the seal.

JONES, C. J. I am clearly of opinion that this testimony

is inadmissible. The sub-tenant is here plainly identified with the tenants, and the amount reserved, and for which the remedy by distress is given by the covenants must, in all controversies growing out of this indenture of lease, be treated as rent reserved.

*Cutting* then contended that the landlord, by allowing a door to be cut from the room separately demised, into the hall, had made the hall a common passage-way, and had given a right to persons occupying that room, to pass and re-pass freely through it, and that the goods in question being in the course of transit from that room to the street, could not be there seized; and cited *Winslow* v. *Henry*, 5 Hill, 481.

*Anthon* referred to the clause in the lease, prohibiting the conveyance of any interest whatever in the premises, by the tenant, without the written consent of the landlord, and considered this right of common way as claimed a violation of the lease, unless a consent in writing from the landlord was produced, and that the covenant was introduced, among other things, to prevent the creation of these implied rights.

JONES, C. J. I think the opening of the door, by the permission of the landlord, made the hall a common way, and that the right to pass and repass was a mere privilege which did not require a written assent. The covenant must be confined to the granting of exclusive interests by the tenant. I shall, therefore, charge the jury, that if they find the fact to be, that the landlord allowed such door to be opened; that this gave a right of way through the hall for persons and things from the room separately demised,

and that the landlord cóuld not seize such goods so passing for the rent of the principal tenant.(1)

Verdict for plaintiff.

(1) It seems very doubtful whether the case relied upon, to establish the subtle position finally ruled in this cause against the defendant, was properly applied.

The hall, where the seizure of the plaintiff's property was made under the distress warrant against the chief lessee, was a part of the premises expressly and exclusively demised to her, and plaintiff's property was thus seized for her rent, because it was found on a part of the premises out of which her rent issued. This right has at all times belonged to the landlord at common law.

In the case of *Winslow* v. *Henry*, (5 Hill, 481,) I do not understand this rule to be at all impugned. The chief justice there speaks of a seizure for the rent of another, "on a common undemised entry" of a dwelling, out of which consequently no rent issued; and says, "if this distress was authorized, the goods of every tenant, enjoying the right of passage, in common with the plaintiff, might be seized for rent, due from the latter, while being conveyed to and from the rooms occupied by them.

In the principal case, the fact that the hall was actually part of the premises demised to the chief tenant, and that her rent issued in part out of it made all the difference. The effect of her verbal permission to the plaintiff, to open a door from his room on that hall, when he had already ingress and egress through another part of the premises, presented the question of the landlord's right to distrain in a very different point of view. Had all the formalities, required by the original lease for a sub-letting, in whole or in part in this particular, been observed, or conceding the position of the chief justice that the verbal assent of the chief landlord, without these formalities, was enough, it might have been contended (with what success it is useless here to remark,) that the goods of the plaintiff were in the hall by the landlord's license, and, therefore, not distrainable for the rent of the chief tenant, to whom it had been demised.

That the case, on which the decision however was founded, was inapplicable, appears, also, from *Buzzard* v. *Cassel*, (8 Barn. & Cres. 141,) on which that case professes to be founded. There the right to distrain was expressly denied, because, by the terms of the lease, the *locus in quo* was not part of the demised premises, a mere privilege or easement appurtenant to lands demised, being in the tenant, out of which privilege or easement no rent issued.

Castillo v. Walker.

This case was adjusted between the parties, and proceeded no farther. A branch, however, of the controversy found its way into the supreme court, (*Milford* v. *Walker*,) where one of the points, raised by the plaintiff in this case, received the direct adjudication of that court on demurrer. It being there unanimously held, that under the reservation of rent in this lease, the tenant could not be allowed to go behind the seal, and show that the payment of $10,000, for furniture, formed a part of it, and, therefore, as such, could not be distrained for.